United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 16, 2006**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 05-10844

CHRISTOPHER MACK,

Plaintiff – Appellant,

v.

CITY OF ABILENE; JIMMY SEALS, Officer; OTHER UNKNOWN POLICE
OFFICERS OF THE ABILENE POLICE DEPARTMENT, Individually and
in their Official Capacities; ABILENE POLICE DEPARTMENT; SUE
BELVER, Officer; ROGER BERRY, Officer; D. W. HAVINS,
Officer; STEVE ROGERS, Officer; RODNEY SMITH, Officer,

Defendants – Appellees.

Appeal from the United States District Court
for the Northern District of Texas

Before DEMOSS, BENAVIDES, and PRADO, Circuit Judges.

PER CURIAM:

The focus of this case is whether Appellant Christopher Mack's
Fourth Amendment rights were violated by a series of warrantless
vehicle searches.  As set out below, we have determined that one of
the vehicle searches was unconstitutional. Relatedly, we hold that
the police officers who conducted that search are not entitled to
the defense of qualified immunity.  Additionally, we hold that the
arrest and apartment search warrant was valid and that Appellant's
arrest therefore was lawful.  Finally, we affirm the dismissal of
Appellant's state law claims against the City of Abilene but vacate
the dismissal of Appellant's section 1983 claims against the City

of Abilene.


## I.  FACTUAL AND PROCEDURAL HISTORY

The named police officers ("Appellees"), who were employed by the City of Abilene (the "City"), applied for and received a warrant to arrest Appellant and search his apartment based on information obtained from a confidential informant.  The confidential informant stated that he had seen Appellant with marijuana at Appellant's apartment.

The next day, Appellant left his place of employment, a restaurant, and walked across a parking lot toward his parked Suburban.  As he approached the vehicle, Appellant remotely unlocked the doors and started the engine.  Immediately thereafter, he was intercepted by two officers, including Officer Jimmy Seals.  Appellant confirmed his identity.  Officer Seals then placed him under arrest.  After searching Appellant and finding no weapons or contraband, Appellees handcuffed Appellant and placed him in a police vehicle.  Appellees then advised Appellant that the officers had an arrest and search warrant for him and his apartment.  They then searched the Suburban after placing him in a patrol car.  A search of the vehicle revealed no weapons or contraband.

Appellees subsequently transported Appellant to his apartment complex in a police vehicle, with one officer driving Appellant's vehicle to the complex.  Appellees obtained a key and executed a

search of the apartment. Again, no contraband was found. Appellees next searched Appellant's Suburban a second time. Appellees found one marijuana seed. Then, Appellees searched Appellant's Cadillac, which was parked in the apartment complex lot. Appellees found nothing illegal. Consequently, Appellant was released and no charges were filed against him.

Appellant filed suit against Appellees and the City alleging that Appellees violated his constitutional rights pursuant to 42 U.S.C. §§ 1983, 1985 and that the unconstitutional conduct by the police was the result of the City's official policy, custom, or practice. He additionally brought state law claims. Appellees filed a motion to dismiss and motion for summary judgment, claiming that the warrant was valid, all of the searches were constitutional, and, even if a search were unconstitutional, Appellees are immune from liability. The district court granted Appellees' motions on all claims. Appellant appeals.

## II. DISCUSSION

When ruling upon a qualified immunity issue, the Supreme Court has instructed that the threshold question to be answered is: "[T]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Thus, as a threshold matter, we must decide whether the alleged

facts, viewed in the light most favorable to Appellant, show that Appellant's constitutional rights were violated. We first briefly discuss the validity of the warrant. Second, we analyze the constitutionality of his arrest and the searches of his two vehicles. *See* U.S. CONST. amend. IV. Finding an unconstitutional search of one of the vehicles, we then examine whether Appellees are protected by the defense of qualified immunity. Finally, we address whether Appellant's constitutional and state law claims against the City were properly dismissed by the district court.

A.    The Warrant Was Valid

Appellant challenges the warrant on the basis of insufficient probable cause. He claims the magistrate incorrectly determined that probable cause existed and therefore issued an invalid warrant. In reviewing the issuance of a warrant, we pay great deference to a magistrate's determination of probable cause. *Illinois v. Gates*, 462 U.S. 213, 236 (1983). The Fourth Amendment merely requires a showing that "the magistrate had a substantial basis for . . . [concluding] that a search would uncover evidence of wrongdoing." *Gates*, 462 U.S. at 236 (internal quotation marks omitted). That said, courts must not "defer to a warrant based on an affidavit that does not provide the magistrate with a substantial basis for determining the existence of probable cause." *United States v. Leon*, 468 U.S. 897, 915 (1984) (internal quotation marks omitted).

4

The magistrate considered the affidavit of Officer Seals. In his affidavit, Officer Seals states that an informant reported that Appellant possessed marijuana at his residence. "An informant's 'veracity,' 'reliability,' and 'basis of knowledge' are all highly relevant in determining the value of his report." *Gates*, 462 U.S. at 230. Here, the informant's report was based on a direct, personal observation. Officer Seals stated that the informant "knows what marijuana looks like in it's [sic] various forms, including the odor of burning marijuana . . . ." It was with that knowledge that the informant reported that Appellant possessed marijuana in his apartment within the prior forty-eight hours. Thus, Officer Seals established the informant's basis of knowledge.

Officer Seals also established the veracity and reliability of the informant by stating that, although he only knew the informant for less than a month, the informant had supplied Officer Seals with truthful and correct information about criminal activity. Additionally, the informant is described as lawfully employed within the community and having no felony convictions. Officer Seals, in his affidavit, presented facts tending to evince the veracity and reliability of the informant. In sum, the magistrate had a substantial basis for finding probable cause. Therefore, the warrant should be considered facially valid.

Appellant additionally argues that the warrant was facially invalid because the affidavit "contains conclusory, vague and

5

ambiguous allegations regarding the credibility of the confidential informant." However, the affidavit was specific in its statement regarding the knowledge obtained from the informant. Appellant has not pointed to particular claims in the affidavit as false and therefore does not seem to be making a *Franks* challenge. *See Franks v. Delaware*, 438 U.S. 154 (1978). Therefore, Appellant's facial attack fails.

We cannot conclude that Appellant's arrest was unconstitutional. "The Constitution does not guarantee that only the guilty will be arrested." *Baker v. McCollan*, 443 U.S. 137, 145 (1979). An arrest pursuant to a properly issued warrant is not unconstitutional, and "a complaint based on such an arrest is subject to dismissal for failure to state a claim." *Smith v. Gonzales*, 670 F.2d 522, 526 (5th Cir. 1982). Appellees arrested Appellant pursuant to a valid warrant.[1] Accordingly, we reject

---

[1] Assuming, *arguendo*, that the warrant was not a valid arrest warrant, the arrest still was constitutional. A warrantless arrest can be made on the basis of probable cause. Probable cause exists when the "totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *United States v. Wadley*, 59 F.3d 510, 512 (5th Cir. 1995). A court considers the expertise and experience of the law enforcement officials when considering what a "reasonable person" would have concluded. *United States v. Garcia*, 179 F.3d 265, 268 (5th Cir. 1999).

Appellees had probable cause to effectuate a warrantless arrest. Appellees had received specific information from a reliable informant regarding Appellant's alleged criminal activity. As stated in the affidavit from the warrant application, the informant was familiar with the drug allegedly possessed by Appellant. The informant had seen Appellant

6

Appellant's contention that his arrest was unconstitutional and affirm the dismissal of this claim.

B.   Fourth Amendment Claims

Appellees searched Appellant's Suburban twice and also searched his Cadillac.  Each of these searches is evaluated below. Unless otherwise stated, we review the district court's findings of fact for clear error and its ultimate determination of Fourth Amendment reasonableness *de novo*.  *United States v. Sinisterra*, 77 F.3d 101, 104 (5th Cir. 1996).

1.   Both Searches of the Suburban Were Constitutional

Appellant claims that Appellees unlawfully searched his Suburban after his arrest and later in his apartment complex parking lot.  Appellant's argument fails.  The searches were constitutional under the automobile exception to the warrant

---

possessing the illegal drug within the previous forty-eight hours.  And, the informant gave Appellees a description of the Appellant and where he lived.  Appellees were able to verify that Appellant lived and worked where the informant had stated and that Appellant was the man seen by the informant with illegal drugs.  *Gates*, 462 U.S. at 242 (recognizing that an officer, in making a warrantless arrest, may rely on an informant's report if the report is "reasonably corroborated by other matters within the officer's knowledge").  Furthermore, Appellees' information would have been sufficient for a magistrate to find probable cause.  *See Terry v. Ohio*, 392 U.S. 1, 37 (1968) (stating that law enforcement officers "must possess facts concerning the person arrested that would have satisfied a magistrate that 'probable cause' was indeed present" when effectuating a warrantless arrest).  Therefore, given the totality of the circumstances, Appellees had probable cause to make a warrantless arrest.

requirement.  This exception applies when a vehicle is "readily capable" of "being used on the highways," and it "is found stationary in a place not regularly used for residential purposes . . . ." *California v. Carney*, 471 U.S. 386 (1985).  Under the automobile exception, officers may conduct a search if they have probable cause to believe that the vehicle contains contraband or evidence of a crime.  *United States v. Buchner*, 7 F.3d 1149, 1154 (5th Cir. 1993).  "Probable cause exists when facts and circumstances within the knowledge of the arresting officer would be sufficient to cause an officer of reasonable caution to believe that an offense has been or is being committed."  *United States v. Carrillo-Morales*, 27 F.3d 1054, 1062 (5th Cir. 1994).

Here, Appellees had probable cause to search the Suburban both times.  The district court found that Officer Seals was told by the informant that Appellant "sometimes hid marijuana in his 1999 Green Chevrolet Suburban bearing Texas License # ILHS87."  The court also found that the information received from the informant was reasonably trustworthy.  *See United States v. Forrest*, 620 F.2d 446, 453 (5th Cir. 1980) (stating that "reasonably trustworthy information" is part of the facts and circumstances at the officer's disposal).  Thus, Appellees had probable cause to search the Suburban for contraband at the time of arrest and again at the

apartment complex.[2]

## 2. Search of the Cadillac Was Unconstitutional

Appellees violated Appellant's constitutional rights when they searched his Cadillac. Appellees claim that no search took place because they merely looked through the vehicle's windows. Appellant, however, alleges and presents evidence that Appellees opened all the Cadillac's doors and "began looking all through the car." Like the district court, we take the Appellant's allegations as true in the motion-to-dismiss context. Therefore, we proceed with our determination assuming the Cadillac was searched.

The Cadillac was not subject to a valid warrantless search under the automobile exception since Appellees had no probable cause to believe that marijuana would be found in the Cadillac. *See United States v. Hogan*, 25 F.3d 690, 693 (8th Cir. 1994) (determining that the seizure of a vehicle was invalid for lack of probable cause because all of the evidence indicated that drugs

---

[2] Appellant also appears to argue that the second search of the Suburban was unconstitutional because the vehicle was not parked within the curtilage of his apartment. We need not make a curtilage determination. The automobile exception applies where a "car [is] parked in an apartment complex parking lot." *United States v. Williams*, 124 Fed. App'x 885, 887 (5th Cir. Mar. 18, 2005) (unpublished). It applies in a parking lot since a lot is "generally open to the public." *Id*. Similarly, the Seventh Circuit found it "inconsequential" that the searched car was in a private apartment parking lot because the concerns of *Carney*–the ready mobility of an automobile and the lesser expectation of privacy associated with them—were still applicable. *See United States v. Gallman*, 907 F.2d 639, 641 (7th Cir. 1990). Here, the same *Carney* concerns exist. Therefore, the search was carried out in a valid manner pursuant to the automobile exception.

would be found in the defendant's home or in a different vehicle, and none of the evidence indicated that drugs would be found in the particular vehicle that was seized). Here, the informant reported to Appellees only that Appellant sometimes kept marijuana in his Suburban, not the Cadillac. Furthermore, upon looking into the vehicle, Appellees do not claim they saw or smelled something that might lead to probable cause. Therefore, no search of the Cadillac was allowed under the automobile exception.

The warrantless search of the Cadillac might be constitutional if the Cadillac was parked within the apartment's curtilage. Appellees had a valid warrant to search Appellant's apartment. The question before us is whether the Cadillac was a part of the apartment's curtilage and therefore subject to search pursuant to the warrant, assuming the warrant's scope could validly include the apartment's curtilage. "[T]he curtilage is the area to which extends the intimate activity associated with the sanctity of a man's home and the privacies of life." *Oliver v. United States*, 466 U.S. 170, 180 (1984) (internal quotation marks omitted). We conclude that the Cadillac was not within the apartment's curtilage.

The circuits are split on the appropriate standard of review on a curtilage determination.[3] In civil cases, however, all courts

---

[3] *See United States v. Breza*, 308 F.3d 430, 435 (4th Cir. 2002) (holding that the question of "curtilage is ultimately a legal one, and thus is subject to *de novo* review, while

10

agree that antecedent facts found by the district court pursuant to such a determination are reviewed for clear error. Here, we need not decide the correct review of a district court's constitutional determination because the district court declined to decide the constitutional curtilage question. Instead, the court assumed without deciding that a constitutional violation occurred and proceeded to the qualified immunity analysis.[4] The court's factual findings included that the Cadillac was parked in the apartment complex parking lot (not a garage or other enclosure), the lot had multiple spaces, and the Cadillac was parked in an assigned space. It did not make a finding regarding the proximity of the Cadillac to the apartment.

---

antecedent factual findings are reviewed for clear error); *United States v. Diehl*, 276 F.3d 32, 38 (1st Cir. 2002) (same); *United States v. Johnson*, 256 F.3d 895, 911-913 (9th Cir. 2001) (same); *Bleavins v. Bartels*, 422 F.3d 445, 449 (7th Cir. 2005) (stating that, in the context of a civil case evaluating a curtilage question, the grant of summary judgment is reviewed *de novo*); *Daughenbaugh v. City of Tiffin*, 150 F.3d 594, 597 (6th Cir. 1998) (same). *But see United States v. Benish*, 5 F.3d 20, 24 (3d Cir. 1993) ("[T]he question of the extent of curtilage is essentially factual and therefore we review only for clear error.") (internal quotation marks and citation omitted); *United States v. Swepston*, 987 F.2d 1510, 1513 (10th Cir. 1993) (same).

[4] We note that the district court's failure to come to a conclusion as to whether a constitutional violation occurred may constitute error in and of itself. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991) ("A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is clearly established at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all," and courts should not "assume, without deciding, this preliminary issue").

11

In light of these findings of fact, we hold that this parking space in the apartment complex parking lot is not part of the curtilage of Appellant's apartment. In determining whether the space was part of the curtilage, this Court looks to the four *Dunn* factors to guide our inquiry: "the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by." *United States v. Dunn*, 480 U.S. 294, 301 (1987). Based on the district court's findings, this Court does not know the proximity of the Cadillac to the apartment. Applying the remainder of the *Dunn* factors, the district court's findings reveal that the parking space was in an open parking lot, the lot is a common area used for parking with multiple spaces, and a vehicle parked in the lot is not shielded from view by others. Under the *Dunn* test, this parking lot space is not within Appellant's apartment's curtilage.

This holding comports with the determinations by several other courts that a parking lot or garage is not curtilage subject to Fourth Amendment protections under similar factual circumstances. *See United States v. Stanley*, 597 F.2d 866, 870 (4th Cir. 1979) ("We hold that the common area parking lot on which Stanley's automobile was parked was not within the curtilage of his mobile home."); *United States v. Cruz Pagan*, 537 F.2d 554, 558 (1st Cir.

12

1976) (holding that entry into a condominium parking garage did not violate the Fourth Amendment); *United States v. Pyne*, 2006 U.S. App. LEXIS 10327, at *3 (4th Cir. Apr. 25, 2006) (unpublished) ("[W]e conclude . . . that the [apartment complex] parking garage was not curtilage subject to Fourth Amendment protections.").

In sum, we hold that Appellees' search of Appellant's Cadillac violated his rights protected by the Fourth Amendment.  Next, we turn to whether Appellees are entitled to qualified immunity for the unconstitutional search.

C.   Qualified Immunity

Appellees claim the defense of qualified immunity to avoid liability for the unlawful search of the Cadillac.  Government officials acting within their discretionary authority are immune from civil damages if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000).  We review the district court's granting of summary judgment on this issue of qualified immunity *de novo*, applying the same standards as a district court. *Morris v. Dillard Dep't Stores*, 277 F.3d 743, 747 (5th Cir. 2001).  In determining whether a jury could reasonably find for the nonmoving party, the evidence and justifiable inferences therefrom are to be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

13

To determine whether Appellees are entitled to the defense of qualified immunity, we ask whether the contours of the constitutional right in question were sufficiently clear that a reasonable officer would understand that what she is doing violates that right. *See Saucier*, 533 U.S. at 202. The warrant explicitly authorized a search of the apartment only and did not mention the Cadillac. The Cadillac was not part of the apartment's curtilage since it is in a public common area and not related to the premises. Thus, the warrant did not authorize Appellees to search the Cadillac.

Additionally, Appellees lacked probable cause to search the Cadillac. Nothing the informant told Appellees implied that Appellant kept marijuana in the Cadillac. The informant merely stated that Appellant allegedly kept marijuana in his Suburban. Obviously, no reasonable officer would mistake a Cadillac for a Suburban. *Cf*. *Knott v. Sullivan*, 418 F.3d 561, 571 (6th Cir. 2005) (concluding that officers could not rely on a warrant "to search one vehicle when all of the vehicle-specific descriptors refer to another vehicle"). Therefore, Appellees lacked probable cause to search the Cadillac, and, therefore, the search does not fall under the automobile exception.

Moreover, Appellees cannot claim that the vehicle was searched in furtherance of officer safety. *See Estep v. Dallas County*, 310 F.3d 353, 358 (5th Cir. 2002) ("[A] warrantless search of the

14

passenger compartment of a vehicle does not violate the Fourth Amendment if the search is conducted to protect the officer's safety."). Appellant had not been driving the Cadillac the day of his arrest and was not in the vicinity of the Cadillac when Appellees brought Appellant back to his apartment complex. Hence, Appellees fail to show it was a reasonable search based on officer safety concerns. Finally, there is no evidence that Appellant consented to the search of the Cadillac or that Appellees mistakenly thought Appellant had consented to that search.

Appellees' search of a car in an open parking lot without a search warrant, without probable cause, without a concern for officer safety, and without consent violates clearly established law. A reasonable officer would not think the Constitution allows a random search of a vehicle where none of the above justifications apply. Thus, Appellees are not entitled to the defense of qualified immunity for the unconstitutional search of the Cadillac. Accordingly, we vacate the district court's finding that qualified immunity was available to Appellees.

D.  Claims Against the City Are Sufficiently Alleged

The district court held that Appellant could not succeed on a claim of municipal liability because he could not show that one or more of the City's employees violated his civil rights as a result of a City policy or custom. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978). It then dismissed all claims of municipal liability based on its finding of no

15

constitutional violation.  We have disagreed with that conclusion, holding that Appellant sufficiently has alleged a constitutional violation on the part of Appellees, employees of the City, when they searched Appellant's Cadillac.  Therefore, we examine the sufficiency of Appellant's allegations under *Monell* and its progeny against the City for the acts of its employees.

Generally, a plaintiff must identify a policy or custom that gave rise to the plaintiff's injury before he may prevail.  *Canton v. Harris*, 489 U.S. 378, 389 (1989).  Under section 1983, a policy and/or custom of inadequate training is an actionable claim in limited circumstances.  *Id*.  A claim of inadequate supervision also is actionable under section 1983.  *See Rios v. City of Del Rio*, 444 F.3d 417, 427 (5th Cir. 2006).

In his amended complaint, Appellant alleges that it is a policy and/or custom of the City to inadequately supervise and train its police officers, including those who were known to have engaged in police misconduct.  Appellant further alleges that, as a result of those policies and/or customs, Appellees believed their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated but would be tolerated.  Appellant thus identifies a custom or policy on the part of the City that allegedly gave rise to his injuries.  *See Canton*, 489 at 389.  He also alleges actionable claims of inadequate training and supervision under section 1983.  *Id.; Rios*, 444 F.3d at 427.

16

Appellant meets the liberal pleading standard of FED. R. CIV. P. 8(a). Rule 8 requires a complaint provide a "short and plain statement of the claim." *Id.* A complaint also must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993); *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002). These requirements apply to a section 1983 suit against a municipality like that brought by Appellant. *See Leatherman*, 507 U.S. at 168. Appellant's complaint provides sufficient notice. Thus, we hold that Appellant has stated cognizable claims against the City under section 1983. Accordingly, we vacate the district court's dismissal of Appellant's claims against the City in relation to the search of the Cadillac.

E. Dismissal of Appellant's State Law Claims

Appellant argues that his state law claims were improperly dismissed for lack of notice. Section 101.101(a) of the Texas Tort Claims Act provides that a "governmental unit is entitled to receive notice of a claim against it under this chapter not later than six months after the day that the incident giving rise to the claim occurred." TEX. CIV. PRAC. & REM. CODE § 101.101(a). Here, the City received a letter from Appellant's attorney on March 10, 2003. Whether or not it was sufficient notice, the letter was untimely for that purpose as it was not received within six months of March

17

8, 2002, the day after the incident. Appellant concedes that he untimely advised the City of his injuries through formal notice but argues that the City had actual notice of his injuries. The Texas Tort Claims Act notice requirements do not apply if the governmental unit has "actual notice" that the claimant was injured. TEX. CIV. PRAC. & REM. CODE § 101.101(c).

For the purpose of bringing state law claims against the City, Appellant fails to show that the City had actual notice of his injuries. Appellant contends that the City had actual notice of his injuries when "Appellant's supervisor reported him as being abducted and when Appellant requested an incident report regarding the search of his home." The Texas Supreme Court has held that actual notice to a governmental unit requires knowledge of "(1) a death, injury, or property damage; (2) the governmental unit's alleged fault producing or contributing to the death, injury, or property damage; and (3) the identity of the parties involved." *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995). Appellant has not alleged that the City had these three pieces of information. *Cf*. *Dallas-Fort Worth Int'l Airport Bd. v. Ryan*, 52 S.W.3d 426, 429 (Tex. App.—Fort Worth 2001, no pet.) (finding sufficient actual notice where plaintiff sent a letter notifying defendant of the injury, the parties involved, and its alleged fault in causing the injury). Thus, Appellant has failed to demonstrate that he provided the City with actual notice of his injuries. Accordingly, we affirm the district court's dismissal of Appellant's state law

18

claims against the City.

### III. CONCLUSION

We AFFIRM the district court's dismissal of Appellant's challenge to the validity of the warrant; Appellant's claim that searches of his Suburban amounted to a constitutional violation; and Appellant's state law claims against the City. Because we hold that the search of the Cadillac was unconstitutional and the police officers conducting the search are not entitled to qualified immunity, we VACATE the district court's summary judgment dismissing Appellant's claim in relation to the search of the Cadillac. We also VACATE the district court's dismissal of Appellant's claims against the City under section 1983 in relation to the search of the Cadillac. The case is remanded for further proceedings in accordance with this opinion.

19