IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 18, 2008

Charles R. Fulbruge III
Clerk

No. 06-51396
Summary Calendar

GEORGE DE ANGELIS

Plaintiff–Appellant

v.

THE CITY OF EL PASO; EL PASO POLICE CHIEF CARLOS LEON,
Individually and in his Capacity as Chief of Police

Defendants–Appellees

Appeal from the United States District Court
For the Western District of Texas
El Paso Division, No. 3:05-cv-113-DB

Before HIGGINBOTHAM, STEWART, and OWEN, Circuit Judges.

PER CURIAM:[*]

George De Angelis sued the City of El Paso (City) and Carlos Leon, the former El Paso Police Chief, under 42 U.S.C. § 1983, after officers of the El Paso Police Department (EPPD) allegedly arrested De Angelis without probable cause and searched his home without a warrant. The district court granted summary judgment in favor of the City and Leon. De Angelis appeals that ruling, as well

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

as the district court's denial of De Angelis's recusal motion and the district court's imposition of sanctions against De Angelis for a frivolous motion to compel. We affirm all of the district court's rulings.

I

In April 2003, Frank Gonzalez told his brother-in-law Commander Michael Czerwinsky of the EPPD that retired EPPD Assistant Chief of Police George De Angelis had threatened former EPPD Chief of Police Carlos Leon. Specifically, De Angelis allegedly said of Leon, who was not present, "one of these days the first chance I get, I am going to put two rounds right here." De Angelis then gestured behind his ear.

Czerwinsky relayed Gonzalez's story to Deputy Chief Robert Almonte, who in turn told Leon. Leon filed a complaint against De Angelis and requested Almonte investigate the matter further. The next day, Almonte directed two detectives, Jesus Pantoja and David Samaniego, to investigate the threat further. Samaniego interviewed Gonzalez and found his story credible. Czerwinsky further vouched for Gonzalez's credibility given the two men's personal relationship. Pantoja met with Leon and concluded Leon legitimately feared De Angelis's threat. Pantoja then drafted an affidavit demonstrating probable cause and delivered it to Judge Kosturakis Oaxaca, who reviewed the affidavit and signed an arrest warrant. Later that night, Pantoja, Samaniego, and several EPPD officers went to De Angelis's house and arrested him. The parties dispute whether De Angelis permitted the detectives inside.

De Angelis sued the City and Leon, and the district court granted summary judgment in favor of both defendants. On appeal, De Angelis alleges the district court erred by: (1) improperly granting summary judgment in favor of the City and Leon; (2) improperly denying De Angelis's motion to recuse; and (3) sanctioning De Angelis.

## II

De Angelis first argues that the trial court erred when it granted summary judgment in favor of both the City and Leon. We review de novo the district court's grant of summary judgment.[1] Summary judgment is proper when the record shows that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.[2] To defeat summary judgment, the nonmoving party must introduce specific facts demonstrating a genuine issue.[3] The court must view the evidence in the most favorable light to the nonmovant and draw all reasonable inferences in the nonmovant's favor.[4]

### A

De Angelis argues that summary judgment in favor of the City was inappropriate. As an initial matter, he argues that the district court acknowledged in its summary judgment order that "a dispute exists as to whether the Detectives were invited in or entered the house without permission." Since summary judgment is appropriate only if "there is no genuine issue as to any material fact,"[5] De Angelis concludes that the district court clearly erred. But as the district court further wrote, "[t]his factual dispute is immaterial to the Court's analysis."

The Supreme Court has held that a municipality is liable under § 1983 when its official policies or customs violate the Constitution.[6] However, a

---

[1] FDIC v. Myers, 955 F.2d 348, 349 (5th Cir. 1992).

[2] FED. R. CIV. PRO. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

[3] Riverwood Int'l Corp. v. Employers Ins. of Wausau, 420 F.3d 378, 382 (5th Cir. 2005).

[4] Id.

[5] FED. R. CIV. PRO. 56(c).

[6] Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978); see also Pineda v. City of Houston, 291 F.3d 325, 328 (5th Cir. 2002) (noting that a plaintiff may establish municipal liability under § 1983 by establishing "[a] persistent, widespread practice of city officials or

municipality will not face liability under a respondeat superior liability theory.[7] Thus, even if the City's detectives entered De Angelis's house without permission, the City is not liable unless its customs or policies caused the unlawful entrance.[8] We pause to note that De Angelis pleaded that a City custom existed that would establish liability, but he has waived that argument on appeal since he presents no argument or evidence establishing that custom.[9]

The Supreme Court has held that a municipal policy maker's single decision might constitute an official policy, thus subjecting the municipality to liability.[10] In some situations, a municipality "chooses a course of action tailored to a particular situation and not intended to control decisions in later situations."[11] If an authorized decision maker—i.e., an individual with final authority under state law to establish municipal policy—adopts the particular course of conduct, this decision may constitute official policy.[12] However, "municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."[13]

---

employees which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.").

[7] Monell, 436 U.S. at 691.

[8] Id. at 690.

[9] Jason D.W. v. Houston Indep. Sch. Sys., 158 F.3d 205, 212 (5th Cir. 1998).

[10] Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986).

[11] Id. at 481.

[12] Id.

[13] Id. at 483.

Nonetheless, the Supreme Court has rejected the argument that merely identifying some decision properly attributable to the municipality is sufficient to prove liability.[14] Rather, the plaintiff must prove that the municipality was the "moving force" through "deliberate conduct."[15] The plaintiff should demonstrate "the requisite degree of culpability and . . . a direct causal link" between the municipal action and the rights violation.[16] "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee."[17]

Thus, it is unsurprising that case law generally requires a close nexus between the policy maker's decision and the constitutional violation. For example, in Pembaur v. City of Cincinnati, a county prosecutor—an authorized decision maker—ordered police officers to enter the plaintiff's office to execute a warrant against a third person, a constitutional violation.[18] In other words, the official ordered the actual violation. By contrast, in Bryan County v. Brown, the Supreme Court rejected plaintiff's argument that the county was liable for a deputy's use of excessive force because the Sheriff, the final decision maker under state law, had hired the deputy after only a cursory review, thereby setting in motion events leading to the injury.[19] As the Supreme Court further stated: "Where a claim of municipal liability rests on a single decision, not itself

---

[14] Bryan County v. Brown, 520 U.S. 397, 404 (1997).

[15] Id.

[16] Id.

[17] Id. at 405.

[18] Pembaur, 475 U.S. at 473-74.

[19] Bryan County, 420 U.S. at 405.

representing a violation of federal law and not directing such a violation, the danger that a municipality will be held liable without fault is high."[20]

De Angelis argues that Leon, as the final decision maker, "hand picked the person, his own employee, who was to head the investigation." But De Angelis does not argue, and the record does not indicate, that Leon ordered the officers to enter De Angelis's house, or even ordered the officers to go to his house. De Angelis provides no evidence of a causal link between Leon's choice of investigators and the alleged rights violation. Like the hiring decision in Bryan County, Leon's mere choice of investigators, a lawful action, does not, without more, subject the City to liability for those officers' acts. To hold the City liable for Leon's decision to appoint certain investigators, who allegedly violated De Angelis's rights, is to hold the City liable under a respondeat superior theory, which the Supreme Court has explicitly rejected.[21]

Moreover, we also reject De Angelis's argument that Leon's decision constituted deliberate indifference, another possible predicate for municipal liability. The Supreme Court has said "'deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."[22] A mere showing of generalized risk is insufficient to establish deliberate indifference;[23] rather the plaintiff must show that a reasonable policy maker would conclude that the rights deprivation that

---

[20] Id. at 408.

[21] Monell, 436 U.S. at 690-91; see also Bryan County, 520 U.S. at 410 ("To prevent municipal liability for a hiring decision from collapsing into respondeat superior liability, a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged.").

[22] Bryan County, 520 U.S. at 410.

[23] Id.

occurred was a "plainly obvious consequence" of his decision.[24]

De Angelis has pointed to no evidence, and we find none in the record, suggesting that the plainly obvious consequence of Leon's decision to appoint Almonte was a violation of De Angelis's rights. De Angelis speculates that since Leon was the alleged victim, his appointed investigators would use any means necessary to please their superior. This is, at best, a speculative showing of generalized harm and misses the high bar the Supreme Court has set. We conclude that the District Court correctly granted summary judgment in favor of the City.

B

De Angelis also argues that the district court erred when it granted summary judgment in favor of Leon. We construe De Angelis's brief to argue two theories: Leon is liable, first, in his personal capacity for pressing charges against De Angelis and, second, in his official capacity for appointing Almonte as the lead investigator. We note at the outset that Leon is not liable under § 1983 for pressing charges, because he was not acting under color of state law,[25] a point De Angelis concedes. De Angelis fails to provide further arguments in favor of personal liability or cite contrary authority supporting personal liability.

We now determine whether Leon is liable in his official capacity. Leon invoked qualified immunity. When a defendant asserts a qualified immunity defense, the plaintiff bears the burden to prove its inapplicability.[26] The district court agreed Leon was entitled to qualified immunity, determined that under the

---

[24] Id. at 411.

[25] 42 U.S.C. §1983; see also West v. Atkins, 487 U.S. 42, 49-50 (1988) ("It is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State.").

[26] McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002).

first prong[27] of the qualified immunity analysis no constitutional violation occurred, and granted Leon summary judgment.

On appeal, De Angelis barely attempts to meet his burden. The brief does not argue that qualified immunity is inapplicable. The brief provides no legal analysis regarding qualified immunity, cites no case law for any legal propositions regarding qualified immunity, and in fact does not even use the term "qualified immunity." Rather than discussing qualified immunity, De Angelis's brief argues that the officers who arrested De Angelis, and who are not parties, lacked probable cause. De Angelis further notes that Gonzalez had a criminal record, whereas De Angelis was awarded the "1998 El Paso Police Department Executive of the Year." Thus, he argues no reasonable officer could have concluded probable cause existed.

Even if we construe these statements as an argument regarding the first prong of qualified immunity analysis,[28] we do not find it persuasive and conclude no constitutional violation occurred. The arresting officers obtained a warrant signed by a magistrate. When reviewing a warrant's issuance, we defer to the magistrate's determination of probable cause.[29] The magistrate must have a substantial basis for concluding probable cause exists.[30] In this case, the magistrate reviewed affidavits and other documents that detailed what Gonzalez had heard and the reasons the investigating officers believed Gonzalez credible.

---

[27] Id. at 322-23 ("[C]ourts evaluating § 1983 claims based on allegedly unconstitutional conduct by state actors should conduct a two-prong inquiry to determine whether the state actors are entitled to qualified immunity. 'The first inquiry must be whether a constitutional right would have been violated on the facts alleged. If a violation could be made out on a favorable view of the parties' submissions, the next sequential step is to ask whether the right was clearly established.'") (quoting Saucier v. Katz, 533 U.S. 194, 200 (2001)).

[28] See id.

[29] Mack v. City of Abilene, 461 F.3d 547, 551 (5th Cir. 2006) (citing Illinois v. Gates, 462 U.S. 213, 236 (1983)).

[30] Id.

Under our case law, the magistrate had a substantial basis for finding probable cause.[31] The fact that De Angelis was not ultimately charged or convicted does not make his arrest unconstitutional. "The Constitution does not guarantee that only the guilty will be arrested."[32] Moreover, this court has held that "if the facts supporting an arrest are put before an intermediary such as a magistrate or grand jury, the intermediary's decision to issue a warrant or return an indictment breaks the causal chain and insulates the initiating party."[33] Thus, De Angelis's arrest pursuant to a properly issued warrant is not unconstitutional. Without proving a constitutional violation, De Angelis has failed to meet his burden under the qualified immunity analysis.

III

De Angelis next challenges the district judge's denial of De Angelis's motion to recuse. Leon, but not the City, argues that this court lacks jurisdiction for this portion of the appeal, because De Angelis's notice of appeal only references the final judgment entered October 2, 2006 and not the July 14, 2005 Order denying De Angelis's motion to recuse. Citing Warfield v. Fidelity & Deposit Company,[34] Leon argues "the Court cannot fairly infer [De Angelis's] intent to appeal from the [recusal order]." We note that the rule articulated

---

[31] See id. (finding a substantial basis for probable cause based on officer's affidavit concerning informant's statements, basis of knowledge, and veracity).

[32] Id. at 552 (quoting Baker v. McCollan, 443 U.S. 137, 145 (1979)).

[33] Smith v. Gonzalez, 670 F.2d 522, 526 (5th Cir. 1982).

[34] 904 F.2d 322, 325 (5th Cir. 1990) ("Where the appellant notices the appeal of a specified judgment only or a part thereof, however, this court has no jurisdiction to review other judgments or issues which are not expressly referred to . . . .").

in Warfield is inapplicable when the notice of appeal is from the final judgment[35] as it is here.

We review the district court's decision to deny the motion to recuse for an abuse of discretion.[36] It is an abuse of discretion to deny recusal where a "reasonable man, cognizant of the relevant circumstances surrounding the judge's failure to recuse, would harbor legitimate doubts about that judge's impartiality."[37]

As a general matter, a judge shall grant the recusal motion if "his impartiality might reasonably be questioned."[38] More specifically, a judge must also grant recusal if:

> He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person: (i) is a party to the proceeding, or an officer, director, or trustee of a party; (ii) is acting as a lawyer in the proceeding; (iii) is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding; (iv) is to the judge's knowledge likely to be a material witness in the proceeding.[39]

De Angelis moved for recusal, arguing that the City's mayor had recently hired the district judge's nephew, Matthew Briones, as an executive assistant. De Angelis argued in his motion that Matthew Briones's employment as an executive assistant "was the equivalent to being an officer or a party," and thus § 455(b)(5)(i) required recusal. After the motion was denied, De Angelis

---

[35] Trust Co. of Louisiana v. N.N.P. Inc., 104 F.3d 1478, 1485 (5th Cir. 1997) ("[W]e have held that an appeal from a final judgment sufficiently preserves all prior orders intertwined with the final judgment.").

[36] In re Hipp, Inc., 5 F.3d 109, 116 (5th Cir. 1993).

[37] Andrade v. Chojnacki, 338 F.3d 448, 454 (5th Cir. 2003) (quoting United States v. Bremers, 195 F.3d 221, 226 (5th Cir. 1999)).

[38] 28 U.S.C. § 455(a).

[39] 28 U.S.C. § 455(b)(5)(i)-(iv).

identified Matthew Briones as a witness against the City. On appeal, De Angelis argues the district judge's impartiality might reasonably be questioned because his nephew both works for the City and was a potential witness.

Contrary to De Angelis's assertion, Matthew Briones's mere employment as an executive assistant does not make him an officer, director, or trustee for the City or the equivalent of a party to this lawsuit. Moreover, several cases in this and other circuits hold that the mere salary interest of a judge's relative generally is not a "financial interest"[40] as § 455 defines.[41] Thus, Matthew Briones's position with the City was not automatic grounds for the district judge's recusal.

We also think that the judge's failure to recuse himself after De Angelis designated Matthew Briones a witness was, at the worst, harmless error. Again, § 455(b)(5) requires a judge to recuse himself if his spouse or relative within the third degree "is to the judge's knowledge likely to be a material witness in the proceeding."[42] De Angelis has shown, and the record exhibits, little evidence demonstrating that Matthew Briones would have been a material witness. De Angelis's own recusal motion establishes that Matthew Briones was hired long after the events at issue to work for a new mayor elected over two years after

---

[40] Sensley v. Albritton, 385 F.3d 591, 599 (5th Cir. 2004) (rejecting argument that judge's impartiality called into question whenever judge's family member is an at-will employee in office representing a party); United States ex rel. Weinberger v. Equifax, Inc., 557 F.2d 456, 463 (5th Cir. 1977) (holding the judge did not abuse his discretion by failing to recuse himself from a case in which one party's counsel employed the judge's son as an associate because "[h]is salary interest as an associate is too remote to fall under th[e] 'financial interest' prohibition"). See also In re Kansas Public Employees Retirement System, 85 F.3d 1353, 1364-65 (8th Cir. 1996) (finding no abuse of discretion when judge denied recusal after his daughter accepted defendant's offer of employment as associate attorney).

[41] 28 U.S.C. § 455(d)(4) ("'[F]inancial interest' means ownership of a legal or equitable interest, however small, or a relationship as director, adviser, or other active participant in the affairs of a party . . . .").

[42] 28 U.S.C. § 455(b)(5)(iv) (emphasis added).

those events occurred. Ultimately, since Matthew Briones never testified because the case was dismissed at summary judgment, we cannot determine whether he would have been a material witness. Nonetheless, we have reviewed de novo the grant of summary judgment and concluded it was proper. Therefore, no conflict arose and any error was harmless.

IV

De Angelis filed a motion to compel and a request for a temporary restraining order; in both, De Angelis incorrectly represented that the City had illegally attached secret grand jury testimony to a pleading filed in another federal proceeding. In fact, the attached document was an indictment against De Angelis, which was a public record. De Angelis's motion to compel sought to continue deposing the City's attorney, who had attached the document, regarding where she had obtained it. The court denied De Angelis's motion to compel as frivolous since the document was publicly available and awarded the City costs and expenses for defending the motion. De Angelis argues that the district court erred when it sanctioned De Angelis for filing a frivolous motion. We review the district court's decision for an abuse of discretion.[43]

A judge who denies a motion to compel "must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motions its reasonable expenses incurred in opposing the motion, including attorney's fees" unless "the motion was substantially justified."[44] In Pierce v. Underwood, the Supreme Court wrote that a motion is "substantially justified" if "there is a 'genuine dispute,' or 'if reasonable people could differ as to [the appropriateness of the contested

---

[43] Tollett v. City of Kemah, 285 F.3d 357, 363 (5th Cir. 2002).

[44] FED. R. CIV. PRO. 37(a)(5)(B).

action].'"[45]

Reasonable people cannot have a genuine dispute regarding whether the City improperly disseminated secret grand jury testimony when the document at issue is not secret grand jury testimony but a public record that is clearly labeled "indictment." We find no abuse of discretion in the district court's order.

\* \* \*

We conclude that the district court properly granted summary judgement. Additionally, we find the district court committed no error in denying De Angelis's motion to recuse or in ordering costs and expenses assessed against De Angelis. For the foregoing reasons, we AFFIRM.

---

[45] 487 U.S. 552, 565 (1988) (brackets in original).