# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 2, 2020

Lyle W. Cayce
Clerk

No. 20-30111

James C. Rountree,

*Plaintiff—Appellant*,

*versus*

Joseph P. Lopinto, III, *Jefferson Parish Sheriff*;
Moon's Towing Service, Incorporated;
Jerome Green, *Deputy Sheriff*,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:19-CV-9143

Before Smith, Clement, and Oldham, *Circuit Judges*.
Jerry E. Smith, *Circuit Judge*:

When the officer investigating a hit-and-run incident came across one of the cars involved, he seized it without obtaining a warrant. The owner claimed that the seizure violated his clearly established constitutional rights under the Fourth Amendment. The district court disagreed and dismissed the claim on summary judgment. Because the warrantless seizure was constitutional, we affirm.

No. 20-30111

I.

On February 6, 2019, Mary Rountree drove her son's car—a Saturn—to a doctor's appointment at Ochsner Hospital. She returned to the car after the appointment, dismayed to find it blocked into its parking space by an SUV. Undeterred, she backed the Saturn out of the parking spot, running into the SUV as she did. She got out briefly to check for damage and then drove away. The incident was caught on video, and a complaint was filed with the Sheriff's Office.

Louisiana criminalizes hit-and-run driving. La. Stat. Ann. § 14:100 (2019). "Hit and run driving is the intentional failure of the driver of a vehicle involved in or causing any accident, to stop such vehicle at the scene of the accident, to give his identity, and to render reasonable aid." *Id.* § 100(A). On February 15, the Sheriff's Office sent James Rountree—the Saturn's owner, Mary Rountree's son, and the plaintiff—a letter informing him that his car had been involved in an accident and requesting that he set up an appointment with the hit-and-run office within seven days.

Plaintiff was in London, where he lived. James A. Rountree ("plaintiff's father")—Mary Rountree's husband and attorney of record for this case—responded to the letter on February 25. He acknowledged that the Saturn belonged to his son but averred that, according to a "confidential source," no hit and run had occurred because there was no damage to either car.[1]

According to the police report, on February 28, Jerome Green, the investigating officer, spoke to plaintiff's father on the phone. Plaintiff's father informed Green that he would not cooperate with the investigation and

---

[1] The Louisiana hit-and-run provision defines "Accident" as "an incident or event resulting in damage to property or injury to person." La. Stat. Ann. § 14:100(B)(4).

again denied that a hit and run had occurred. Shortly thereafter, Green went to plaintiff's parents' apartment in an unsuccessful effort to speak with either plaintiff or Mary Rountree.[2]

On the heels of that failed attempt, Green inspected the parking lot of the apartment complex and came across the Saturn. He noted damage to the driver's-side rear bumper—consistent with where he expected damage to be after reviewing the surveillance tape. Green called a wrecker and had the Saturn towed. He returned to the apartment and knocked on the door, but no one answered. Green left a notice at the door and exited the apartment complex.

After some back and forth between the two, the Sheriff's Office sent plaintiff's father a letter on March 26, informing him that the evidentiary hold on the vehicle had been released. On March 29, plaintiff's father and Mary Rountree went to the towing yard to recover the Saturn, but, because it was registered in plaintiff's name, the towing company refused to release the vehicle to his parents. Plaintiff visited the United States in April and paid $1,674.58 to have the Saturn released.

Plaintiff sued, asserting that the seizure was unlawful and seeking damages. Lopinto moved for summary judgment. He asserted that the seizure was lawful and, in the alternative, that he was entitled to qualified immunity ("QI"). After a hearing, the district court held that the seizure was lawful and, even if it wasn't, Lopinto was protected by QI. On that reasoning, the court granted summary judgment and dismissed plaintiff's claim. Plaintiff appeals.

---

[2] Instead, Green was greeted at the door by an unknown woman who stated she was visiting from out of town and confirmed that the Rountrees were residents there but declined to contact them.

## II.

We review a summary judgment *de novo*, applying the same standards as the district court.  *See, e.g.*, *McCoy v. Alamu*, 950 F.3d 226, 230 (5th Cir. 2020), *petition for cert. filed* (July 16, 2020) (No. 20–31).  When a defendant asserts QI, the burden shifts to the plaintiff to make two showings.  *Id.*

> First, the plaintiff must show the defendant violated his constitutional rights.  Second, the plaintiff must show the asserted right was clearly established at the time of the alleged misconduct.  If the plaintiff fails at either step, the federal court can grant [QI] by addressing either step or both of them.

*Cleveland v. Bell*, 938 F.3d 672, 675–76 (5th Cir. 2019) (citations omitted). Because we conclude that Lopinto did not violate plaintiff's constitutional rights, we begin and end our analysis with the Fourth Amendment.

Under the Fourth Amendment, "[w]arrantless searches and seizures are per se unreasonable unless they fall within a few narrowly defined exceptions."  *United States v. Kelly*, 302 F.3d 291, 293 (5th Cir. 2002) (quotation omitted).  Among those exceptions, relevant here, is the so-called "automobile exception . . . .."  That exception to the warrant requirement "recognize[s] a distinction between the warrantless search and seizure of automobiles . . . and the search of a home or office."  *Cardwell v. Lewis*, 417 U.S. 583, 589 (1974) (plurality opinion).  Justified "by the mobility of vehicles and occupants' reduced expectations of privacy while traveling on public roads," *United States v. Beene*, 818 F.3d 157, 164 (5th Cir. 2016), the exception permits the "police to search a vehicle if they have probable cause to believe that the vehicle contains contraband," *United States v. Fields*, 456 F.3d 519, 523 (5th Cir. 2006).

Under the automobile exception, "[t]he police may seize a car from a public place without a warrant when they have probable cause to believe that the car itself is an instrument or evidence of crime."  *United States v. Cooper*,

No. 20-30111

949 F.2d 737, 747 (5th Cir. 1991).  That is so because it would make "little sense" to permit a warrantless seizure of a car "when the police have probable cause to believe that the car *contains* evidence," while simultaneously "requiring a warrant before seizing a car when the police have probable cause to believe the car itself *is* such evidence or is an instrument of crime."  *Id.*

Although neither brief mentions *Conlan* or *Cooper*, the rule articulated in those two cases directly informs our decision.  To be sure, a private apartment parking lot is, definitionally, not "public."  But neither is it "private" in the sense relevant for Fourth Amendment protection.[3]  There is no reasonable expectation of privacy—nor does plaintiff intimate that there ought to be—in a shared apartment parking lot.[4]  Thus, *Conlan* and *Cooper* control.  Because there was probable cause to believe that the car was "an instrument or evidence of crime," its seizure did not require a warrant.  *Id.*[5]

The district court's finding determined that exigent circumstances at least partially justified the seizure.  Plaintiff makes much of a supposed lack

---

[3] The Supreme Court recently held that the automobile exception does not apply to a car parked within the curtilage of a home.  *Collins v. Virginia*, 138 S. Ct. 1663, 1671 (2018).  Although unlikely, it is at least conceivable that a car parked in an apartment complex parking lot would be within the dwelling's curtilage.  *See Mack v. City of Abilene*, 461 F.3d 547, 553–54 (5th Cir. 2006) (per curiam) (holding that a vehicle parked in an apartment complex parking lot was not within the apartment's curtilage).  In any event, plaintiff does not assert that the vehicle was within the curtilage of the dwelling.  *Collins*, therefore, is inapposite.

[4] *See United States v. Jones*, 893 F.3d 66, 72 (2d Cir. 2018) (holding that there is no reasonable expectation of privacy in a parking lot accessible to other tenants of a multi-family home); *see also Florida v. White*, 526 U.S. 559, 566 (1999) ("[B]ecause the police seized respondent's vehicle from a public area—respondent's employer's parking lot—the warrantless seizure also did not involve any invasion of respondent's privacy."); *Conlan*, 786 F.3d at 389 (applying *Cooper*'s reasoning to a car parked in motel parking lot); *Mack*, 461 F.3d at 554.

[5] Plaintiff does not argue that Green lacked probable cause to believe that the Saturn was an instrument or evidence of crime.

of exigent circumstances justifying the seizure. Had he been apprised of *Conlan* and *Cooper*, he would realize the folly of that argument. "[P]robable cause alone" justifies seizing a vehicle if "the car itself is an instrument or evidence of crime." *Id.* Additional exigencies beyond the ready mobility of the vehicle are unnecessary to justify the seizure. *Conlan*, 786 F.3d at 389 (citing *United States v. Sinisterra*, 77 F.3d 101, 104 (5th Cir. 1996)). Therefore, the finding of exigent circumstances is irrelevant.

Because there was probable cause to believe the car was an instrument or evidence of crime, a warrant was not required to seize it. The seizure did not violate the Fourth Amendment, so Lopinto is entitled to QI, and we AFFIRM.