**16-87-cr**
*United States v. Jones*

# In the

# United States Court of Appeals

## For the Second Circuit

————

AUGUST TERM, 2017

ARGUED: AUGUST 15, 2017
DECIDED: JUNE 19, 2018

No. 16-87-cr

UNITED STATES OF AMERICA,
*Appellee,*

*v.*

RASHAUD JONES,
*Defendant-Appellant,*

CHARLES TYSON, MADELAINE RIVERA,
*Defendants.*[1]

————

Appeal from the United States District Court
for the District of Connecticut.
No. 3:13-cr-2-1 – Michael P. Shea, *District Judge*.

————

Before: WALKER, CABRANES, and RAGGI, *Circuit Judges*.

————

[1] The Clerk of Court is respectfully directed to amend the caption as above.

Defendant-Appellant Rashaud Jones appeals, following a jury trial in the United States District Court for the District of Connecticut (Michael P. Shea, *J.*), from his conviction for conspiracy to possess with intent to distribute cocaine base, possession with intent to distribute various quantities of cocaine base and cocaine, possession of a firearm in furtherance of a narcotics trafficking crime, and unlawful possession of a firearm and ammunition by a convicted felon.

On appeal, Jones argues that we should vacate his conviction because the district court erred by: (1) denying a motion to suppress evidence seized from a warrantless search of a car used by him; (2) denying his motion to suppress evidence seized from his apartment; (3) permitting a witness to testify regarding her drug-trafficking activities with Jones prior to the period charged in the indictment; (4) instructing the jury about inferences that they could make if they found that Jones was the sole occupant of the car; and (5) applying a two-level Sentencing Guidelines enhancement for obstruction of justice.

Rejecting each of Jones's arguments, we AFFIRM his conviction and sentence. In this opinion we discuss why the district court did not err in refusing to suppress evidence seized from a car parked in the common parking lot of a multi-family building where the vehicle search was warrantless but supported by probable cause. The

remaining arguments are resolved by a summary order issued simultaneously with this opinion.

_____

> GEOFFREY M. STONE, Assistant United States Attorney (Marc H. Silverman, Assistant United States Attorney, *on the brief*), *for* John H. Durham, United States Attorney for the District of Connecticut, New Haven, CT, *for Appellee*.
>
> NORMAN A. PATTIS & BRITTANY B. PAZ, Pattis & Smith, LLC, New Haven, CT, *for Defendant-Appellant*.

_____

JOHN M. WALKER, JR., *Circuit Judge*:

Defendant-Appellant Rashaud Jones appeals, following a jury trial in the United States District Court for the District of Connecticut (Michael P. Shea, *J.*), from his conviction for conspiracy to possess with intent to distribute cocaine base, possession with intent to distribute various quantities of cocaine base and cocaine, possession of a firearm in furtherance of a narcotics trafficking crime, and unlawful possession of a firearm and ammunition by a convicted felon.

On appeal, Jones argues that we should vacate his conviction because the district court erred by: (1) denying a motion to suppress evidence seized from a warrantless search of a car used by him; (2) denying his motion to suppress evidence seized from his

apartment; (3) permitting a witness to testify regarding her drug-trafficking activities with Jones prior to the period charged in the indictment; (4) instructing the jury about inferences that they could make if they found that Jones was the sole occupant of the car; and (5) applying a two-level Sentencing Guidelines enhancement for obstruction of justice.

Rejecting each of Jones's arguments, we AFFIRM his conviction and sentence. In this opinion we discuss why the district court did not err in refusing to suppress evidence seized from a car parked in the common parking lot of a multi-family building where the vehicle search was warrantless but supported by probable cause. The remaining arguments are resolved by a summary order issued simultaneously with this opinion.

**BACKGROUND**

Jones challenges the district court's denial of his motion to suppress evidence seized from a warrantless search of a car. The search occurred in December 2012, following months of investigation into Jones's drug-trafficking activities.

A U.S. Drug Enforcement Administration Task Force handles a variety of narcotics investigations in Hartford, Connecticut. For years, Officer James Campbell has been a member of that Task Force. Years prior to the events at issue in this case, Officer Campbell had arrested Jones for possession and sale of crack cocaine.

In November 2011 and August 2012, the Hartford Police Department received anonymous tips identifying Jones as a drug dealer and indicating that weapons may be involved in his activities. This information was conveyed to Officer Campbell, who, along with other investigators, began conducting daily surveillance of Jones from August through November 2012.

During their surveillance, officers observed Jones routinely meeting with individuals on Evergreen Avenue in Hartford, including Tyrone Upshaw, Charles Tyson, and Madelaine Rivera. On September 6, 2012, officers saw Upshaw violate motor vehicle laws as he drove away from Evergreen Avenue. Officers stopped the car and obtained Upshaw's consent to search, during which they recovered marijuana and several items connected to Jones. Specifically, officers uncovered a set of keys to a car that were labeled "Buck," a known alias of Jones; a money gram identifying "Rashad Jones"; and a dentist receipt that listed Jones's address as 232 Westland Street.

During the course of the investigation, the officers took several steps to confirm that Jones lived at 232 Westland Street. For example, Officer Campbell checked the Hartford Police Department computer system and Lexis Nexis for information related to Jones, both of which indicated that his most recent address was 232 Westland Street, second floor. In addition, during a November 26, 2012 motor vehicle

stop, several weeks before the events at issue in this case, Jones identified his address as 232 Westland Street.

On December 18, 2012, at approximately 8:15 a.m., officers observed Jones driving a Dodge Magnum to 232 Westland Street, where he pulled into a shared driveway and parked the vehicle behind the building. The driveway is accessible to various tenants of 232 Westland Street, a three-story, multi-family apartment building, and to the tenants of another multi-family building next door.

At approximately 9:20 a.m., Tyson and Rivera arrived in a green Infiniti and pulled into the same rear lot of 232 Westland Street. Less than an hour later, Tyson and Rivera left in the Infiniti. Officers stopped them and, with their consent, searched the car and recovered crack cocaine. Tyson told the officers that he had obtained the crack from Jones on the third floor of 232 Westland Street, that he did so several times a week, and that Jones still had narcotics at that address. During this conversation, Rivera received two incoming calls from Jones, but did not answer them. The officers arrested Tyson and Rivera.

At approximately 10:30 a.m., the officers observed Jones leave 232 Westland Street as a passenger in a Chevy Tahoe. The officers stopped the Tahoe, arrested Jones, recovered approximately $4,000 from his person, and brought him back to 232 Westland Street. With

consent from the registered owner of the Tahoe, officers searched the vehicle and recovered an additional $4,400.

Meanwhile, at 232 Westland Street, officers observed a tow truck at the very end of the shared driveway removing the Dodge Magnum. The officers called the towing company and learned that someone named "Buck" had requested that the vehicle be towed to his mechanic because the struts were bad. The officers instructed the tow-truck operator to return the car to the rear lot of 232 Westland Street, where it had previously been parked.

Officer Campbell then knocked on the door of the second-floor apartment of 232 Westland Street, and, receiving no response, left and obtained a search warrant for both the second- and third-floor apartments. The subsequent search of the second-floor apartment yielded crack cocaine, marijuana, paraphernalia, and ammunition. Officer Campbell then went to the Dodge Magnum that had been returned to the back lot by the towing company. At the suppression hearing, he testified that, because the windows were tinted, he walked up to the vehicle, put his head on the rear hatch window, and looked inside. App. 160; Gov't App. 8–10, 13. He saw an open paper bag sitting inside a black Zales bag and, within the open paper bag, what looked like one box with a second box on top of it. App. 160; Gov't App. 9. He recognized the bottom box as Lawman ammunition, which has a distinct logo. The officers then conducted a warrantless

search of the Dodge Magnum and recovered crack cocaine, powder cocaine, a digital scale, firearms, and ammunition.

Jones was charged with seven drug trafficking and firearms offenses, including conspiring to distribute and possess with intent to distribute cocaine from approximately December 2011 through December 2012. Prior to trial, Jones unsuccessfully moved to suppress the evidence recovered from the Dodge Magnum.

On March 2, 2015, a jury convicted Jones of all seven counts. Following a sentencing hearing on January 5, 2016, the district court sentenced Jones to 211 months' imprisonment, followed by 5 years of supervised release. Jones timely appealed both his conviction and sentence.

**DISCUSSION**

On appeal, Jones argues that the district court erred by admitting evidence seized from the warrantless search of the Dodge Magnum because, in these circumstances, the automobile exception to the warrant requirement does not apply. Specifically, Jones argues that: (1) the officers lacked probable cause to search the vehicle; (2) he had an enhanced expectation of privacy in the Dodge Magnum because it was parked in a residential lot; and (3) there were no exigent circumstances justifying the search of the Dodge Magnum before obtaining a warrant. We discuss each argument in turn.

On appeal from a suppression ruling, we review factual findings for clear error, and questions of law *de novo*. *United States v. Faux*, 828 F.3d 130, 134 (2d Cir. 2016). The district court's ultimate determination of whether probable cause existed and whether the automobile exception applied are both reviewed *de novo*. *United States v. Gagnon*, 373 F.3d 230, 235 (2d Cir. 2004).

**I.     The Automobile Exception to the Warrant Requirement**

Although the Fourth Amendment generally requires police to obtain a warrant before conducting a search, there is a well-established exception for vehicle searches. *Maryland v. Dyson*, 527 U.S. 465, 466 (1999) (per curiam). "If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment . . . permits police to search the vehicle without more." *Id.* at 467. "The Supreme Court has relied on two rationales to explain the reasonableness of a warrantless search" under this exception: (1) a vehicle's "inherent mobility" and (2) a citizen's reduced expectations of privacy in the contents of that vehicle. *United States v. Navas*, 597 F.3d 492, 497 (2d Cir. 2010).

Jones does not dispute that the Dodge Magnum was inherently mobile. His remaining arguments that the automobile exception does not apply are unpersuasive. We hold that the officers had probable cause to search the Dodge Magnum and that the automobile

exception applies because Jones had no heightened expectation of privacy in a vehicle parked in a multi-family parking lot. The district court therefore did not err in admitting evidence recovered from the vehicle search.

**A. Probable Cause**

The officers had probable cause to search the Dodge Magnum. Probable cause exists "where the facts and circumstances within . . . [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that evidence of a crime will be found in the place to be searched." *United States v. Gaskin*, 364 F.3d 438, 456 (2d Cir. 2004) (alterations in original) (internal quotation marks omitted) (quoting *Brinegar v. United States*, 338 U.S. 160, 175–76 (1949)).

At the suppression hearing, Officer Campbell was questioned about his search of the Dodge Magnum. He testified that he observed a box of ammunition in the car when he peered through the car's rear window. The district court credited this testimony. Assuming that the district court did not commit clear error in crediting this testimony, this evidence was sufficient to establish probable cause to search the car. Officer Campbell was aware that Jones was a convicted felon who could not legally possess ammunition. Therefore, Officer Campbell's observation of ammunition in the car provided probable cause that

the Dodge Magnum contained evidence of the crime of possession of ammunition by a felon.

Yet we cannot definitively say that this conclusion was correct because we do not have before us the evidence that was introduced in the district court. The parties have included in the record on appeal Officer Campbell's testimony, but they have not included a photograph of the Dodge Magnum showing its tinted windows or a photograph of the ammunition box that Officer Campbell allegedly observed in the car.

We need not, however, rely on Officer Campbell's observation. Even excluding it, there was sufficient evidence for the district court to conclude that the officers had probable cause. By the time Officer Campbell searched the car, the officers had observed Jones driving the Dodge Magnum alone to 232 Westland Street, had recovered crack cocaine from the car that Tyson and Rivera were driving after they left 232 Westland Street, had been told by Tyson that he obtained this crack from Jones at 232 Westland Street, and had arrested Jones, who had $4,000 in cash in his possession. Officers had also observed a tow truck attempting to remove the Dodge Magnum from 232 Westland Street at Jones's request. The officers seized the car and then searched 232 Westland Street where they recovered crack, marijuana, ammunition, and other evidence from Jones's second-floor apartment. It was only at that point, after collecting other

evidence of Jones's involvement in drug trafficking, that the officers searched the Dodge Magnum.

Based on this record, we conclude that the district court did not err in finding that the officers had probable cause to believe that the Dodge Magnum contained evidence of a crime.

## B.  Expectation of Privacy

One rationale for the automobile exception is that a citizen possesses a reduced expectation of privacy in the contents of his car, particularly in light of "the pervasive regulation of vehicles capable of traveling on the public highways." *California v. Carney*, 471 U.S. 386, 392 (1985). This rationale applies "forcefully" when an officer observes the vehicle "being used for transportation." *Navas*, 597 F.3d at 500–01. Jones argues that he had a heightened expectation of privacy in the Dodge Magnum because he parked the car in a lot within his home's curtilage.

After oral argument in this case, the Supreme Court granted a writ of certiorari in *Collins v. Virginia* to address the issue of whether the automobile exception applies to a vehicle parked in a private driveway and within the curtilage of a home. *See* 138 S. Ct. 53 (2017) (mem.); *United States v. Jones*, No. 16-87, Dkt. No. 107 (2d Cir. Oct. 2, 2017) (a letter from the government regarding the grant). The Supreme Court recently decided *Collins*, holding that the automobile exception does not permit "a police officer, uninvited and without a

warrant, to enter the curtilage of a home in order to search a vehicle parked therein." 138 S. Ct. 1663, 1668 (2018). That decision, however, has no effect on Jones's appeal, which fails because the driveway in which Jones's vehicle was parked was the *shared* driveway of tenants in two multi-family buildings and was not within the curtilage of Jones's private home.

We hold that Jones had no legitimate expectation of privacy in the rear parking lot, where he initially parked the car and to which it was returned by the towing company. First, the lot was not within the curtilage of Jones's home. The lot was a common area accessible to other tenants of 232 Westland Street and to tenants of a multi-family building next door, and therefore Jones could not reasonably expect that it should be treated as part of his private home. *See, e.g.*, *United States v. Dunn*, 480 U.S. 294, 300 (1987); *United States v. Alexander*, 888 F.3d 628, 632 (2d Cir. 2018) ("[T]he central question . . . [is] whether the area in question harbors the intimate activity associated with the sanctity of a man's home and the privacies of life.") (internal quotation marks omitted); *cf. Collins*, 138 S. Ct. at 1673 n.3 (explaining that the driveway was "private, not public, property, and the [vehicle] was parked in the portion of the driveway beyond where a neighbor would venture").

Second, the lot was a common area of which Jones had no exclusive control. Jones argues that tenants have a legitimate privacy

interest in such common areas, and cites to several cases in which courts have held that there was an unlawful, warrantless search where a police dog sniffed an individual's apartment door while in a common hallway. Those cases, however, concern whether a resident has "a legitimate expectation that the contents of [the] closed apartment would remain private," *United States v. Thomas*, 757 F.2d 1359, 1367 (2d Cir. 1985). They do not address whether an individual has a legitimate expectation of privacy in the hallway itself.

Our precedents establish that because an individual has no power to exclude another from a common area, a defendant has no legitimate expectation of privacy in a "common area [that is] accessible to the other tenants in the multi-family apartment building." *United States v. Fields*, 113 F.3d 313, 321 (2d Cir. 1997). In *United States v. Holland*, 755 F.2d 253, 255 (2d Cir. 1985), we held that because they are not "subject to his exclusive control . . . it is the established law of this Circuit that the common halls and lobbies of multi-tenant buildings are not within an individual tenant's zone of privacy even though they are guarded by locked doors." *See also United States v. Hoover*, 152 F. App'x 75, 77 (2d Cir. 2005) (summary order) (holding that "[d]efendant ha[d] no reasonable expectation of privacy from others viewing his van when parked in a multi-user parking lot"). Here, because the parking lot was not subject to Jones's

exclusive control and was not within the curtilage of his home, he did not have a legitimate expectation of privacy when he parked there.[2]

## C. Exigency

Jones finally argues that there were no exigent circumstances requiring a warrantless search of the Dodge Magnum, because all of the relevant suspects were in custody and investigators had secured the area. But "the automobile exception does not have a separate exigency requirement." *Dyson*, 527 U.S. at 466–67 (explaining that the automobile exception simply requires that a car be readily mobile and that probable cause exists to believe it contains contraband). Jones's arguments to the contrary are misplaced.

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's denial of Jones's motion to suppress evidence recovered from the search of the Dodge Magnum. For the reasons stated in this opinion

---

[2] The government also argues that Jones did not have a legitimate expectation of privacy because (1) he had entrusted his vehicle to a third party when he enlisted a towing company to tow it to his mechanic; and (2) the Dodge Magnum has a rear window and the trunk's contents, including the box of ammunition, were exposed. While these arguments may have force, we need not address them in light of our probable cause determination and our holding that the automobile exception applies to the search of a vehicle parked in a shared parking area. Further, we do not address the second argument because we do not have photographs of the car or its contents, and the government concedes that the windows were tinted.

and in the summary order issued simultaneously with this opinion,

we AFFIRM the judgment of the district court in all respects.