**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

**January 3, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ORLANDO VASQUEZ,

    Defendant - Appellant.

No. 22-1294
(D.C. No. 1:20-CR-00322-WJM-1)
(D. Colo.)

_____

### ORDER AND JUDGMENT[*]
_____

Before **EID**, **SEYMOUR**, and **KELLY**, Circuit Judges.
_____

Defendant-Appellant Orlando Vasquez was convicted of being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1), and was sentenced to 58 months' imprisonment and three years' supervised release. 1 R. 131–33. Pursuant to a plea agreement, Mr. Vasquez pled guilty, reserving the right to appeal from the denial of his motion to suppress. Id. at 87–88, 90. His motion sought to suppress evidence from a search and seizure that occurred in his front yard and driveway. Aplt. Br. at 1; 1 R. 76–84. On appeal, Mr. Vasquez argues that police officers violated his Fourth Amendment rights when they searched him within the curtilage of his home

_____

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

without a warrant.  Aplt. Br. at 6.  We have jurisdiction under 28 U.S.C. § 1291 and we affirm.

## Background

Officers observed a car with expired tags make a turn without coming to a complete stop at a red light.  1 R. 28–29, 63.  Officers activated their lights for a traffic stop, but the car made another turn and passed six houses before it pulled into a shared driveway.  Id. at 29.  The car pulled into the left side of the driveway closest to a house on that side.  The house is separated from the street and sidewalk by a small front yard.  Id.  A paved walkway runs directly from the sidewalk to the front steps of the house, and a footpath runs from the front steps to the driveway on the right side of the house, with grass between the footpath and the porch and windows. Id.; Aplt. Br. at 2–3 (picture of house below; there was no shrub in front of the windows at the time of arrest).



The officers pulled in front of the house, and an officer crossed the front yard

2

and walked toward the driver side of the vehicle.  1 R. 29.  The driver had his window rolled down.  Id.  The officer recognized the driver, Mr. Vasquez, as a gang member and was familiar with the residence and the neighboring residence as involved in recent gang-related shootings.  Id. at 64.  The officer explained the reason for the stop and asked for Mr. Vasquez's license and registration.  Id. at 30.  The officer then asked Mr. Vasquez to step out of the vehicle to be patted down for weapons.  Id.  Mr. Vasquez initially shook his head no, at which point the officer ordered him from the car and grabbed his arm.  Id.  According to the officers, Mr. Vasquez resisted arrest and the officers took him to the ground in the front yard and handcuffed him.  Id. at 30, 64.  Mr. Vasquez told the officers he had a gun in his waistband.  Id. at 31.  The officers rolled him over and retrieved a loaded firearm.  Id. at 65.

Officers charged Mr. Vasquez and arrested him.  2 R. 5.  Mr. Vasquez filed a motion to suppress, arguing that the front yard and driveway were curtilage and that officers invaded it without a warrant or exigent circumstances in violation of his Fourth Amendment rights.  1 R. 31–32.  The district court denied the motion without a hearing and concluded that the driveway was not curtilage.[1]  Id. at 76, 79–83.

**Discussion**

"When reviewing a motion to suppress, we view the evidence in the light most

---

[1] The district court did not address the front yard in its curtilage analysis, 1 R. 76–84, despite that Mr. Vasquez argued the front yard was curtilage in his motion to

favorable to the government, accept the district court's findings of fact unless they are clearly erroneous, and review de novo the ultimate question of reasonableness under the Fourth Amendment." United States v. Pettit, 785 F.3d 1374, 1378–79 (10th Cir. 2015). The ultimate determination of what constitutes curtilage is reviewed de novo. United States v. Cousins, 455 F.3d 1116, 1121 (10th Cir. 2006).

The issue is whether officers intruded upon the curtilage of Mr. Vasquez's home when they entered his front yard and driveway to search him.[2] Aplt. Br. at 1. Reviewing de novo, we conclude that neither the shared driveway nor the portion of the front yard where officers searched Mr. Vasquez is curtilage.

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and this protection extends to curtilage, or "the area 'immediately surrounding and associated with the home[.]'" Florida v. Jardines, 569 U.S. 1, 5–6 (2013) (quoting Oliver v. United States, 466 U.S. 170, 180 (1984)). Fourth Amendment protection extends to curtilage because "privacy expectations are most heightened" inside the home and in the "area intimately linked to the home, both physically and psychologically[.]" California v. Ciraolo, 476 U.S. 207, 213 (1986).

suppress, id. at 32–37. On appeal, Mr. Vasquez argues the district court erred by not addressing the front yard. Aplt. Br. at 17–20. We analyze both the front yard and the driveway in our curtilage analysis.

[2] Given our disposition, it is unnecessary to decide the government's alternative argument that Mr. Vazquez implicitly consented to the stop in his driveway by leading the officers to his home and his conduct thereafter. Aplee. Br. at 9.

In United States v. Dunn, the Supreme Court articulated four factors to determine whether an area is curtilage: (1) "the proximity of the area claimed to be curtilage to the home," (2) "whether the area is included within an enclosure surrounding the home," (3) "the nature of the uses to which the area is put," and (4) "the steps taken by the resident to protect the area from observation by people passing by."  480 U.S. 294, 301 (1987).  The Court emphasized that these factors are "useful analytical tools" and not a "formula that [should be] mechanically applied" given that the main issue is whether the area is intimately connected to the home itself.  Id.  In Dunn, the Court concluded that a barn behind a ranch house was not curtilage.  Id.  In subsequent cases, the Court found that certain areas in urban environments were curtilage — including a front porch, Jardines, 569 U.S. at 7, and a fenced-in section of a driveway, Collins v. Virginia, 138 S. Ct. 1663, 1670–71 (2018) — without explicitly applying the Dunn factors.

Here, the Dunn factors suggest that neither the yard nor driveway are curtilage. We previously applied Dunn to state that a front yard was not curtilage, Reeves v. Churchich, 484 F.3d 1244, 1254–55 (10th Cir. 2007), and other circuits have held that shared driveways are not curtilage.  See United States v. Coleman, 923 F.3d 450, 456 (6th Cir. 2019); United States v. Jones, 893 F.3d 66, 72 (2d Cir. 2018).

In this case, the government concedes the first factor — the yard's proximity to the home — favors Mr. Vasquez.  Aplee. Br. at 15.  But the next three factors favor the government.  Under the second and fourth factors, the record is clear that no enclosure surrounds either the yard or the driveway, nor are there any structures

5

attempting to block public visibility of the yard or the driveway.  See Aplt. Br. at 2–3 (photos of property).  Under the third factor, no objective evidence (such as the presence of tables, lawn chairs, or a grill) might suggest that the yard or driveway are used for "intimate activity associated with the 'sanctity of a man's home and the privacies of life.'"  Dunn, 480 U.S. at 300, 302–03 (quoting Boyd v. United States, 116 U.S. 616, 630 (1886)).  We disagree with Mr. Vasquez that walking between the house and the driveway, in plain view of the street, constitutes activity intimately tied to the home.  Aplt. Br. at 16.

Mr. Vasquez argues that after Jardines and Collins, the Dunn factors are not applicable to urban environments (as opposed to rural environments).  Id. at 10–13, 15–17.  Mr. Vasquez emphasizes that the Supreme Court found a front porch, Jardines, 569 U.S. at 7, and a partially enclosed section of a private driveway, Collins, 138 S. Ct. at 1670–71, to be curtilage even though both were visible from the street, therefore rendering Dunn factor four inapposite.  Aplt. Br. at 16–17.  He argues that these two cases stand for the proposition that any area "outside the front window" is curtilage, id. at 6 (quoting Collins, 138 S. Ct. at 1671), and that the last three Dunn factors either do not apply to urban residential areas or favor him.  Id. at 17.  Therefore, Mr. Vasquez contends that because officers were standing close to the front windows of his house when they searched him, they intruded upon its curtilage.

But neither case overrules Dunn — in fact, both Jardines and Collins are compatible with Dunn's holding that the "centrally relevant consideration" in determining curtilage is "whether the area in question is so intimately tied to the

6

home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection."  Dunn, 480 U.S. at 301; see Jardines, 569 U.S. at 6–7; Collins, 138 S. Ct. at 1671.  Even accepting Mr. Vasquez's argument that rigid application of the Dunn factors may be less effective in urban areas,[3] the front yard and driveway here are not "so intimately tied to the home itself" as to render them curtilage — unlike the front porch in Jardines or the enclosed driveway in Collins. Dunn, 480 U.S. at 301.

In fact, the areas in this case are materially distinguishable from Jardines and Collins.  In Collins a portion of the driveway found to be curtilage was enclosed on three sides, located behind the front perimeter of the house, and contained a side door accessing the house and a vehicle covered with a tarp.  138 S. Ct. at 1668, 1670–71. Here, the driveway was not private but shared with residents of another house, no portion of the driveway was enclosed, and the car was parked in front of the house's perimeter.

In Jardines, a front porch, the "classic exemplar" of curtilage given its natural demarcation and direct access to windows into the home, was extended Fourth

---

[3] Mr. Vasquez cites United States v. Swepston, where we noted that "the Dunn factors are particularly useful in deciding the curtilage question" and mentioned an out-of-circuit case (United States v. Acosta, 965 F.2d 1248, 1255–56 (3d Cir. 1992)) holding that the Dunn factors were not as useful in an urban area.  987 F.2d 1510, 1514 (10th Cir. 1993), overruled in part on other grounds by Cousins, 455 F.3d at 1121 & n.4.  But similarly, in that case our discussion of Dunn's applicability remained centered on the "central question of whether the area [was] so intimately tied to the home" that it warranted Fourth Amendment protection, regardless of whether the area was urban or rural.  Id.

Amendment protection. 569 U.S. at 6–7. The yard here is different. First, as "easily understood from our daily experience[,]" a front porch implicates different privacy interests than a front yard abutting the street under a commonsense "conception defining [] curtilage[.]" Id. at 7 (quoting Oliver, 466 U.S. at 182 n.12). Second, Jardines reinforces that "boundaries of the curtilage are generally 'clearly marked,'" such as with a porch. Id. In the yard at issue, a footpath (between the steps and the driveway) divided the larger street-side portion of the yard from the smaller house-side portion of the yard abutting the windows — but the search at issue in this case occurred entirely on the street-side portion of the yard. See Body-camera footage, May 23, 2020. Even if the house-side portion of the yard directly adjacent to the windows constituted curtilage (an issue we do not decide), the officers' search and seizure on the street-side portion of the yard and the shared driveway did not trigger Fourth Amendment protections.

      **AFFIRMED.**

                Entered for the Court

                Paul J. Kelly, Jr.
                Circuit Judge