*United States v. Almonte-Polanco*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 29th day of June, two thousand twenty-three.

Present:
> DEBRA ANN LIVINGSTON,
> *Chief Judge*,
> ROSEMARY S. POOLER,
> WILLIAM J. NARDINI,
> *Circuit Judges*.

---

UNITED STATES OF AMERICA,

> *Appellee*,

> v.                                                                      20-4126

FELIPE CONFESOR ALMONTE-POLANCO,

> *Defendant-Appellant*.

---

For Appellee:                         TIFFANY H. LEE, Assistant United States Attorney *for* Trini E. Ross, United States Attorney, Western District of New York, Buffalo, NY.

For Defendant-Appellant:              STEPHANIE M. CARVLIN, Law Office of Stephanie Carvlin, New York, NY.

Appeal from a judgment of the United States District Court for the Western District of New

York (Larimer, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Felipe Confesor Almonte-Polanco ("Almonte-Polanco") appeals from the December 10, 2020 judgment of the United States District Court for the Western District of New York (Larimer, *J.*) convicting him, following a guilty plea, of making a false statement in a passport application in violation of 18 U.S.C. § 1542 and aggravated identity theft in violation of 18 U.S.C. § 1028A. Almonte-Polanco challenges the district court's denial of his motion to suppress evidence seized following a July 23, 2018 street encounter, which culminated in his arrest and the subsequent search, pursuant to a warrant, of his personal residence.[1] Almonte-Polanco contends that law enforcement violated his Fourth and Fifth Amendment rights by seizing him without reasonable suspicion and thereafter searching his home pursuant to a search warrant that was based in part on information derived from the earlier Fourth Amendment violation.[2]

On appeal from the denial of a suppression motion, we review a district court's findings of fact for clear error and its resolution of questions of law and mixed questions of law and fact *de novo*. *See United States v. Hawkins*, 37 F.4th 854, 857 (2d Cir. 2022). The denial of a request for an evidentiary hearing on a motion to suppress is reviewed for abuse of discretion. *United States v. Lewis*, 62 F.4th 733, 741 (2d Cir. 2023). In resolving this appeal, we assume the parties'

---

[1] The facts of this encounter are derived from the video files of Rochester Police Officer William Baker's ("Officer Baker") body-worn camera footage included in the Government's supplemental appendix.

[2] Almonte-Polanco additionally argues in his briefing that law enforcement subjected him to custodial interrogation without reading him his *Miranda* rights. Almonte-Polanco conceded at argument that this claim was beyond the scope of what he reserved for appeal in his written plea agreement. Accordingly, we deem this claim waived.

familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

## I.       Seizure

Almonte-Polanco contests the district court's conclusion that Officer Baker did not seize him at the outset of their July 2018 interaction but rather initiated a consensual encounter that did not implicate Almonte-Polanco's Fourth Amendment rights.   The critical moment, according to Almonte-Polanco, occurred within seconds of Officer Baker's approach.   Almonte-Polanco was seated on a low-lying barrier on the perimeter of a parking lot with two friends when Officer Baker approached.   One friend, Brian, started to walk away, and returned after Officer Baker told him, "You can hang for a second, man, yeah, you're good."   Almonte-Polanco argues that he was unlawfully seized the instant Officer Baker uttered these words to Brian, because, at that point, Officer Baker made clear that the three men were not free to leave, even though Officer Baker lacked reasonable suspicion that Almonte-Polanco was engaged in criminal activity.

For the purposes of the Fourth Amendment, a police encounter becomes a seizure when, "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Weaver*, 9 F.4th 129, 142 (2d Cir. 2021) (en banc) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)).   By this standard, it is "clear that a seizure does not occur simply because a police officer approaches an individual and asks a few questions." *Florida v. Bostick*, 501 U.S. 429, 434 (1991); *see also Florida v. Royer*, 460 U.S. 491, 497 (1983) (plurality opinion of White, *J.*).   In determining whether a seizure has occurred, we consider "the overall coercive effect of the police conduct." *United States v. Lee*, 916 F.2d 814, 819 (2d Cir. 1990) (citation omitted).   "Factors which might suggest a seizure . . . include: the threatening presence of several officers; the display of a weapon; physical touching of the person by the officer; language or tone indicating that compliance with the officer was

compulsory; prolonged retention of a person's personal effects, such as . . . identification; and a request by the officer to accompany him to the police station or a police room." *Id.* (citing *Mendenhall*, 446 U.S. at 554).

Here, the district court did not err in concluding that Almonte-Polanco was not seized within the meaning of the Fourth Amendment upon this initial encounter with Officer Baker. The circumstances bear none of the hallmarks indicating that Officer Baker exercised a degree of coercive pressure rising to the level of a seizure. *See I.N.S. v. Delgado*, 466 U.S. 210, 216 ("Unless the circumstances of the encounter are so intimidating as to demonstrate that a reasonable person would have believed he was not free to leave if he had not responded, one cannot say that the questioning resulted in a detention under the Fourth Amendment."). Officer Baker was on bicycle patrol by himself when he came upon Almonte-Polanco's group. Officer Baker spoke to the group in a cordial tone of voice without making any demands and never displayed a weapon. Officer Baker did not alter these dynamics when he told Brian that he could "hang for a second"— a precatory statement not phrased in the imperative, not intonated in a threatening manner, nor suggestive of mandatory compliance. That Brian chose to stay does not mean that Officer Baker *coerced* him to do so. *See id.* ("While most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response."). Furthermore, prior to these pivotal words, Officer Baker had not evinced any special interest in Almonte-Polanco, as distinct from the other members of his group. There is thus nothing in Baker's brief exchange with Brian to suggest that a reasonable person *in Almonte-Polanco's position* would have felt coerced to stay as a result of this exchange.

Almonte-Polanco's Fourth Amendment claim hinges on whether he was seized at this initial juncture because, immediately thereafter, Officer Baker received a radio transmission

4

informing him that a man matching Almonte-Polanco's description was observed in the area peddling illegal cigarettes and may have been involved in a recent shooting.   Officer Baker's suspicions were reinforced when Almonte-Polanco handed him an identification card bearing the name Manuel Soto-Torres, which prompted Officer Baker to undertake investigative steps to confirm whether Almonte-Polanco had presented a false identity.[3]   This information gave Officer Baker reasonable suspicion to detain Almonte-Polanco briefly for the purpose of investigating these potential crimes.   *See United States v. Sokolow*, 490 U.S. 1, 7 (1989) (explaining that "the police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot'" (quoting *Terry v. Ohio*, 392 U.S. 1 (1968))).

In sum, Almonte-Polanco's Fourth Amendment rights were not violated during this interaction.   There is thus no basis to suppress any tangible evidence resulting from the street encounter or the subsequent warrant-based search of Almonte-Polanco's residence.

## II.        Evidentiary Hearing

Almonte-Polanco next contends that the district court abused its discretion in refusing to hold an evidentiary hearing on his motion to suppress.   For the following reasons, this claim, too, provides him no basis for relief.

As an initial matter, the Government contends that this claim should be reviewed only for plain error.   We disagree.   Plain error review is ordinarily reserved for claims of error not raised

---

[3] Almonte-Polanco argues that the record fails to support the inference that Officer Baker was alert to the possibility that Almonte-Polanco was impersonating somebody else.   To the contrary, as described *infra*, Officer Baker's interactions with other law enforcement personnel following his receipt of Almonte-Polanco's identification card demonstrate that Officer Baker reasonably suspected that Almonte-Polanco was not Manuel Soto-Torres.

in the district court, *see United States v. Boyland*, 862 F.3d 279, 288–89 (2d Cir. 2017), but that is not the case here. The magistrate judge convened a hearing to discuss the evidence he should consider in adjudicating Almonte-Polanco's suppression motion, during which the Government rebuffed Almonte-Polanco's request for a hearing by asserting that "there is no need for a factual hearing" because "everything this court needs to consider to make a ruling . . . is on the tape." App'x 175–76. Later, and contrary to its original position that no evidence other than the footage need be considered, the Government introduced in supplemental briefing an officer awareness bulletin flagging Almonte-Polanco's use of a false identity that Officer Baker purportedly saw prior to the July 23, 2018 encounter. Almonte-Polanco again objected—this time to the introduction of the bulletin. Thus, Almonte-Polanco repeatedly sought an evidentiary hearing, and we review his claim for abuse of discretion. *Lewis*, 62 F.4th at 741.

"[A]n evidentiary hearing on a motion to suppress ordinarily is required if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question." *In re Terrorist Bombings of U.S. Embassies in E. Afr.*, 552 F.3d 157, 165 (2d Cir. 2008) (quoting *United States v. Watson*, 404 F.3d 163, 167 (2d Cir. 2005)). Almonte-Polanco has failed to establish that any such issue of fact was genuinely in dispute. Almonte-Polanco asserts that the district court erred in finding that Officer Baker had contemporaneous knowledge of the officer awareness bulletin when he stopped Almonte-Polanco on July 23, 2018. But the footage of the encounter demonstrates that Officer Baker knew of the bulletin when he encountered Almonte-Polanco, as reflected by: (1) Officer Baker's decision to call Investigator Cynthia Muratore ("Muratore")—the investigator who drafted the bulletin—immediately after obtaining the identification card from Almonte-Polanco with the name Manuel Soto-Torres; (2) Officer Baker's unprompted question to

6

Muratore seeking to confirm whether the man presenting as Manuel Soto-Torres was actually Almonte-Polanco; and (3) Officer Baker's subsequent remark to Muratore that Almonte-Polanco may have arrived in one of the cars in the parking lot, but that "it's not the same car from the bulletin." Without reason to conclude that there existed a genuinely contested issue of fact going to the validity of the stop, the district court did not abuse its discretion in resolving the suppression motion without a hearing.

*　　*　　*

We have considered Almonte-Polanco's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court